IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARC E. ALBERT                              :

                                            :

     v.                                     :    Civil Action No. DKC 14-360

                                            :

SITE MANAGEMENT, INC., et al.               :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is a motion by Defendants Site Management, Inc. t/a Site Realty Group, and Site Leasing, Inc. to modify, or partially withdraw, the reference. (ECF No. 1). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I.  Background**

This case traces its lineage to the bankruptcy case *Jin Suk Kim Trust d/b/a La Union Mall*, No. 11-14033, in the United States Bankruptcy Court for the District of Maryland. In that bankruptcy case, Plaintiff was appointed as the disbursing agent to assist Debtor Jin Suk Kim Trust in carrying out the duties and responsibilities set forth in the Amended Plan of Reorganization ("Plan") approved by the Bankruptcy Court on July 27, 2012. (Civil Action No. 13-1853, ECF No. 1, ¶ 5). Debtor

owned and operated the shopping center known as La Union Mall in Langley Park, Maryland ("Shopping Mall"). (*Id.* ¶ 10). Since 2009, Defendant Site Management had managed the Shopping Mall and Defendant Site Leasing leased space in the Shopping Mall. (*Id.* ¶¶ 11, 15). Debtor applied to retain Defendants as its property manager and leasing agents which the Bankruptcy Court approved. (*Id.* ¶¶ 12-13). Pursuant to this application, "the terms and conditions of any lease agreement were to be subject to the Debtor's final approval, were to be made in the Debtor's name, and were to be executed by the Debtor." (*Id.* ¶ 18).

Plaintiff alleges that on the eve of the July 27, 2012 Plan confirmation, the Defendants negotiated a long-term lease, took substantial commissions, and disposed of assets, all while being instructed not to do so and without informing the Plaintiff or the Bankruptcy Court. (*Id.* ¶¶ 21-23). It is further alleged that Defendants did not provide accurate receivables information to the Debtor, the Bankruptcy Court, and creditors. The bankruptcy plan was proposed and then approved by the court based upon this inaccurate information. (*Id.* ¶¶ 24-25). Plaintiff alleges that Defendants failed to keep complete records; negotiated lease extensions to maximize their returns without full disclosure; failed to close accounts at the direction of Plaintiff; and prepared inaccurate monthly

2

operating reports for submission to the Bankruptcy Court. (*Id.* ¶¶ 26-29).

On June 25, 2013, Plaintiff filed a complaint in this court. (Civil Action No. 13-1853, ECF No. 1). Plaintiff claims that Defendants' actions constituted negligence, breach of contract and fiduciary duty, and fraud. Defendants moved to dismiss the complaint for (1) failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7); (2) lack of standing; and (3) failure to comply with an order of the Bankruptcy Court. (ECF No. 8). Plaintiff opposed the motion (ECF No. 10), and Defendants replied. (ECF No. 12). On September 25, 2013, the undersigned referred this case to Bankruptcy Judge Thomas Catliota pursuant to 28 U.S.C. § 157(a) and Local Rule 402. (ECF No. 13). Civil Action number 13-1853 was administratively closed on October 17, 2013.

Defendants filed a motion to modify, or partially withdraw, the reference pursuant to 28 U.S.C. § 157(d) on October 28, 2013. (Civil Action No. 14-360, ECF No. 1). Plaintiff opposed on November 7, 2013. (ECF No. 2). On December 12, 2013, Judge Catliota ruled that the bankruptcy court had subject matter jurisdiction of the referred case under 28 U.S.C. § 1334(b).

(Adversary No. 13-554, Dkt. No. 29).[1]  On December 17, 2013, Judge Catilota denied Defendants' motion to dismiss to the extent it was based on grounds two (2) and three (3).  He denied the motion to dismiss on the remaining ground on January 28, 2014, after La Union Center, LLC filed a stipulation that Plaintiff could proceed on behalf of both parties, thereby addressing the issue of failing to join a necessary party.  (Adversary No. 13-554, Dkt. Nos. 32 and 38).

**II. Motion to Withdraw Reference to Bankruptcy Court**

Defendants seek the permissive withdrawal of the reference of this adversary proceeding to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides in pertinent part: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."[2]  "The district court has broad discretion in deciding whether reference should be withdrawn for cause shown."  *In re Millennium Studios, Inc.*, 286 B.R. 300, 303 (D.Md. 2002).  Courts determining whether

---

[1] The filing of a motion to withdraw the reference does not stay the administration of the case in bankruptcy court. Fed.R.Bankr.P. 5011(c).

[2] 28 U.S.C. § 157(d) also provides for what is referred to as "mandatory withdrawal."  A case must be withdrawn if "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  Defendants do not argue that withdrawal of the reference is mandatory.

cause exists for withdrawal are to consider the following factors: (1) whether the matter at issue between the parties is "core" within the meaning of Section 157(b)(2) of the Bankruptcy Code; (2) uniformity of bankruptcy administration; (3) forum shopping; (4) conservation of creditor and debtor resources; (5) expediency of the bankruptcy proceeding; (6) the likelihood of a jury trial. *Id.*; *Mason v. Ivey*, 498 B.R. 540, 549 (M.D.N.C. 2013); *Vieira v. AGM, II, LLC*, 366 B.R. 532, 537-38 (D.S.C. 2007); *In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 681 (E.D.Va. 2003). It is the movant's burden to show cause for the permissive withdrawal of reference to bankruptcy court. *Millennium Studios*, 286 B.R. at 303.

Defendants argue that the reference should be withdrawn because the matter at issue is a "non-core" proceeding, but even if the matter is considered "core," withdrawal conserves resources because the bankruptcy court may not enter any final orders or judgments on these state common law claims pursuant to the recent decision of the Supreme Court of the United States in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). Plaintiff's opposition is devoid of any substantive response, simply arguing that Defendants' motion "appears to be a motion for reconsideration and/or attempt to have the Bankruptcy Court overrule the District Court," which he opposes. (ECF No. 2 ¶ 9).

28 U.S.C. § 157(b)(1) gives a bankruptcy court authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," subject to appellate review by the district court under 28 U.S.C. § 158. In a proceeding that is not "core" but otherwise related to a case under Title 11, the bankruptcy court can only submit proposed findings of fact and conclusions of law to the district court, which shall consider the recommendation along with any objections by the parties. 28 U.S.C. § 157(c)(1).

Section 157(b)(2) provides a non-exclusive list of "core" proceedings. Pertinent to this case, the list includes "matters concerning the administration of the estate," § 157(b)(2)(A), and "other proceedings affecting the liquidation of the asserts of the estate," § 157(b)(2)(O).

Following the Supreme Court's decision in *Stern*, courts have determined that the correct way to examine the first factor of the permissive withdrawal determination is not "whether the matter can be classified as 'core' under 28 U.S.C. § 157, but rather [] whether, under *Stern*, the [b]ankruptcy [c]ourt has the final power to adjudicate it." *ACC Retail Prop. Dev. And Acquisition Fund, LLC v. Bank of Am., N.A.*, No. 5:12-CV-361-BO, 2012 WL 8667572, at *2 (E.D.N.C. Sept. 28, 2012) (*quoting Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462

B.R. 457, 467 (S.D.N.Y. 2011)). Under that rubric, the bankruptcy court must possess both statutory *and* constitutional authority to issue a final decision.

Turning first to the statutory question, Plaintiff's claims fit within the category of "arising in" cases, generally defined as a controversy that "would have no practical existence *but for* the bankruptcy." *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (emphasis in original). *Grausz* involved a claim by the debtor against his bankruptcy lawyer for malpractice. The United States Court of Appeals for the Fourth Circuit held that the claim arose in Title 11 because it involved legal advice concerning the bankruptcy itself, and thus would have no practical existence but for the bankruptcy case. *Id.* at 471. Like the debtor's claim against his law firm for malpractice in his bankruptcy in *Grausz*, Plaintiff's claims here would have no existence but for the bankruptcy. Plaintiff is the disbursing agent for the debtor who appointed Defendants – with the bankruptcy court's approval – as the debtor's leasing agent and property manager. Plaintiff claims that Defendants were deficient in their duties post-petition and pre-confirmation and that their representations were relied upon by the bankruptcy court. Such alleged wrongdoing goes to the integrity of the bankruptcy process.

Furthermore, Plaintiff's claims are also "core proceedings" under 28 U.S.C. § 157(b)(2)(A)'s broad inclusion of "matters concerning the administration of the estate." They are akin to claims brought by a debtor to assert a malpractice claim against his bankruptcy lawyer, or against the accounting firm that provided accounting services prior to plan confirmation, situations courts have found to be "core" proceedings. *See, e.g.*, *Grausz*, 321 F.3d at 475 (holding that a debtor's malpractice claim against his bankruptcy lawyer is a core proceeding) (*citing In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1995)).

In holding that such claims were "core," the United States Court of Appeals for the Fifth Circuit explained in *Southmark* that ensuring that "court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively," and supervising court-appointed professionals "bears directly on the distribution of the debtor's estate" for "[i]f the estate is not marshaled and liquidated or reorganized expeditiously, there will be less money available to pay creditors' claims." *Id.* at 931; *see also In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260-61 (3[d] Cir. 2007) (finding that claims stemming out of court-appointed accounting firm concerning debtors' valuation was relied upon by the bankruptcy court cannot stand separate from the underlying bankruptcy

proceeding); *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009) ("[W]e agree with our sister circuits that malpractice claims against court-appointed professionals stemming from services provided in the bankruptcy proceeding are inseparable from the bankruptcy context."). The *Southmark* court recognized that its logic could extend out to any claim that could conceivably enrich the bankruptcy estate, but distinguished the malpractice claim before it, pointing to the fact that claims in other cases "could stand alone from the bankruptcy case. A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone." 163 F.3d at 931. Like the circumstances in *Garusz*, *Southmark*, *Seven Field Development Corp.*, and *Capitol Hill Group*, the claims here, while based in state law, are inseparable from the bankruptcy context, and are an extension of the proceedings in bankruptcy court.

Statutory authorization is not enough, however; Congress's authorization to bankruptcy courts to hear and determine a claim must also be constitutional. Defendants argue that Article III prohibits the bankruptcy court from deciding this case, citing to the Supreme Court decision in *Stern v. Marshall*. *Stern* addressed the allocation of authority from the Article III

district court to the Article I bankruptcy court. The Supreme Court in *Stern* held that even where the bankruptcy court possesses statutory power to enter a final judgment under Section 157 because the issue is "core," Article III presents an independent bar to the bankruptcy court's adjudication of at least some cases. At issue in *Stern* was a bankruptcy petition filed by the debtor. The creditor filed a complaint in the bankruptcy proceeding, contending that the debtor had defamed him. The debtor responded by filing a counterclaim for tortious interference with a gift, arguing that the creditor had wrongfully prevented the debtor's deceased spouse from taking the legal steps to provide her with half of his property. 131 S.Ct. at 2601. The Supreme Court ruled that the pre-petition, state law counterclaim for tortious interference was an example of a "core" proceeding for which the bankruptcy court had statutory authority to enter final judgment. *See* 28 U.S.C. § 157(b)(2)(C). Despite that statutory authority, Article III of the Constitution did not permit the bankruptcy court – an Article I court – to exercise the "judicial Power of the United States" upon "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." 131 S.Ct. at 2611. The Court found that separation of powers principles embodied in the Constitution mandated that the judicial power be exercised

by judges with life tenure and salary protection, characteristics not possessed by bankruptcy judges. "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' . . . the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 2609 (*quoting N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment)). Unless an action "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process," then a bankruptcy court may not decide the matter. *Id.* at 2618.

There is a split of authority as to how broadly *Stern* should be read. *See In re Renewable Energy Dev. Corp.*, 500 B.R. 77, 86 (D.Utah 2013) ("In the two years since *Stern* has been decided, a large number of courts have written opinions applying *Stern* to various aspects of bankruptcy proceedings. . . . [I]t is clear that the courts have not reached any general consensus about how to interpret the Supreme Court decision."). Some courts view the decision as narrow, pointing to the Court's admonition that the decision "does not change all that much," because the "question presented here is a narrow one." *Id.* at 2620; *see also id.* ("We do not think the removal of counterclaims such as [debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor. . . .

11

We conclude today that Congress, in one isolated respect, exceeded [Article III] in the Bankruptcy Act of 1984."). These courts view *Stern* as invalidating only Section 157(b)(2)(C) concerning counterclaims by the estate filed against persons filing claims against the estate. *See, e.g.*, *In re AFY, Inc.*, 461 B.R. 541, 547-48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *Mason v. Ivey*, 498 B.R. 540, 546 (M.D.N.C. 2013) ("courts should be cautious in invalidating federal law on the ground that *dicta* in *Stern* might *one day* be extended to other core proceedings.") (emphasis in original); *In re Agriprocessors, Inc.*, 479 B.R. 835, 839 (Bankr.N.D.Iowa 2012) ("Most courts, including this Court, have concluded that the Supreme Court should be taken at its word – that the holding in *Stern* is very narrow in spite of some language in the analysis that could be given a broader application or interpretation."); *In re Connelly*, 476 B.R. 223, 232 (Bankr.E.D.Va. 2012) ("Given the deliberate efforts to limit the impact of *Stern* and the numerous qualifiers in the holding, this Court will not expand the reach of *Stern* beyond that intended by the Supreme Court."); *In re Safety Harbor Resort and Spa*, 456 B.R. 703, 715 (Bankr.M.D.Fla. 2011) ("[N]othing in the

Supreme Court's opinion actually limits a bankruptcy court's authority to adjudicate the other 'core proceedings' identified in section 157(b)(2).").

Other courts – including one in this district – have applied *Stern* broadly, focusing on the decision's concerns over maintaining the Constitution's separation of powers. *See Dang v. Bank of Am. N.A.*, Civ. Action No. RDB-12-3343, 2013 WL 1683820, at *11 (D.Md. Apr. 17, 2013). These decisions view those concerns as implicating all of Congress's grant of authority under Section 157(b)(2). *See In re Ortiz*, 665 F.3d 906, 914 (7th Cir. 2011); *In re El-Atari*, No. 1:11cv1090 (LMB/IDD), 2011 WL 5828013, at *2 (E.D.Va. Nov. 18, 2011) ("*Stern*, together with *Granfinanciera* [*v. Nordberg*, 492 U.S. 33 (1989)], clearly supports the conclusion that the authority to issue a final decision in a fraudulent conveyance action [28 U.S.C. § 157(b)(2)(H)] is reserved for Article III courts.").

Those that apply *Stern* narrowly have the better argument. While *Stern*'s dicta is broad, the numerous times the Court emphasizes the limited nature of its holding cannot be ignored. Furthermore, the claims at issue here are of a different nature than those in *Stern*. The alleged wrongdoing of Defendants in this case concerns actions they took or failed to take in their court-approved roles as property manager and leasing agent for debtor's property. This alleged wrongdoing occurred post-

13

petition, pre-confirmation. These claims are not brought for alleged wrongdoing that occurred pre-petition or possess only a tangential relationship to the bankruptcy proceeding, but instead are by their nature intimately tied to the bankruptcy proceeding. *See In re Am. Bus. Fin. Servs., Inc.*, 457 B.R. 314, 319-20 (Bankr.D.Del. 2011) (finding *Stern* does not preclude the bankruptcy court from adjudicating state law claims because they "arose after [plaintiff] filed bankruptcy and relate entirely to matters integral to the bankruptcy case. If not for the bankruptcy, these claims would never exist."); *In re McClelland*, 460 B.R. 397, 405 (Bankr.S.D.N.Y. 2011) (finding that a negligence claim against a real estate appraiser retained by order of the bankruptcy court and compensated from the bankruptcy estate, on a claim grounded on work performed for the bankruptcy estate, concerned "administration of the estate," 28 U.S.C. § 157(b)(2)(A), for which the bankruptcy court can rule, reading *Stern* narrowly). Defendants' argument that *Stern*'s holding is that "the [b]ankruptcy [c]ourt may not, consistent with the requirements of Article III of the Constitution, enter any final order and judgments on state law claims," (ECF No. 1, at 5), goes too far. *See* 28 U.S.C. § 157(b)(3) ("A determination that proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."); *In re Salander O'Reilly Galleries*, No. 07-

30005, 2011 WL 2837494, at *7 (Bankr.S.D.N.Y. July 18, 2011) ("Nowhere in . . . *Stern* does the Supreme Court rule that the bankruptcy court may not rule with respect to state law . . . when deciding a matter directly and conclusively related to the bankruptcy."). In sum, the nature of the claim, combined with the limited holding of *Stern*, lead to the conclusion that the bankruptcy court possesses both statutory and constitutional authority to adjudicate the claims at issue. This conclusion counsels against withdrawing the reference.[3]

---

[3] Even if the bankruptcy court did not have authority to decide the case because it was a "non-core" matter, the bankruptcy court could still preside, providing recommendations to the district court. 28 U.S.C. § 157(c)(1). Furthermore, "[a] majority of courts . . . have concluded that a bankruptcy court has the power to submit proposed findings of fact and conclusions of law on claims that are 'core' but for which they do not have constitutional authority under *Stern*." *Dang*, 2013 WL 1683820, at *12. While a situation where the bankruptcy court cannot rule definitively might counsel in favor of withdrawing the reference, that fact is not dispositive to the analysis, given that 28 U.S.C. § 157(c)(1) contemplates the issuance of reports and recommendations to the district court. *El-Atari*, 2011 WL 5828013, at *6 and *6 n.9. There is still significant value in having the bankruptcy court preside over preliminary legal and discovery issues in a proceeding that is related to a bankruptcy case given its greater familiarity with the issues involved. *See In re Arbco Capital Mgmt., LLP*, 479 B.R. 254, 267-68 (S.D.N.Y. 2012) ("Delaying withdrawal of the reference will provide this [c]ourt with the benefit of the [b]ankruptcy [c]ourt's expertise and familiarity with the background of this matter, as well as similar bankruptcy matters."); *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 440 (S.D.N.Y. 2012) (denying a motion to withdraw the reference after the completion of discovery and where a motion for summary judgment was pending because, given that the bankruptcy court was familiar with the facts of the case and had issued rulings in the case, it "is more efficient to allow the [b]ankruptcy

In regards to the other factors, Defendants argue that the interests of judicial economy and conservation of parties' resources would be served by having the district court decide this case, as opposed to keeping it with the bankruptcy court where it can only make proposed findings of fact and conclusions of law, subject to *de novo* review by the district court. Even assuming, *arguendo*, that the bankruptcy court is confined merely to providing recommendations, Defendants' position is unpersuasive. As one district court aptly explained:

> Although [the movant] argues that the entitlement to *de novo* review would make the bankruptcy court determination "superfluous," that line of reasoning would prevent any non-core matter from ever being referred to the bankruptcy court. Without more, this argument carries little if any, weight in favor of withdrawal. . . . While it is true that, on the objection of the party, the district court must review *de novo* any determination by the bankruptcy judge on a non-core matter, *see* 28 U.S.C. § 157(c)(1), it is equally true that [the bankruptcy judge] has a better vantage point from which to make proposed findings of fact and conclusions of law in the first instance.

---

[c]ourt to provide recommendations on findings of facts and conclusions of law than for this [c]ourt to begin anew"); *In re Appalachian Fuels, LLC*, 472 B.R. 731, 745 (E.D.Ky. 2012) (denying the motion to withdrawal the reference where the bankruptcy judge had "expansive knowledge" of the estate and several of the defendants); *In re El-Atari*, 2011 WL 5828013, at *5. Therefore, even if the bankruptcy court did not have authority to decide this case, its expertise with the parties and the issues counsel against withdrawing the reference.

*In re H & W Motor Express Co.*, 343 B.R. 208, 215 (N.D.Iowa 2006) (alterations in original, internal quotation marks and citations omitted). Given the bankruptcy court's familiarity with the parties and the issues from its prior efforts adjudicating the bankruptcy case, this factor is either neutral or against withdrawal. Defendants also argue that because Plaintiff's claims are state law, any decisions will not negatively affect the uniformity of bankruptcy administration. As discussed above, however, the claims at issue stem from parties acting with the bankruptcy court's approval in furtherance of administering the estate. The issues certainly cut to the core of the bankruptcy process's integrity for which the bankruptcy court has an interest in handling the case. "Uniformity of administration is achieved when [b]ankruptcy [c]ourts handle – at least initially – matters with factual and legal issues in common with the bankruptcy action." *In re Erickson Retirement Communities, LLC*, Civ. No. WDQ-11-3736, 2012 WL 1999493, at *3 (D.Md. June 1, 2012). Finally, while a bankruptcy court may not conduct a jury trial absent the express consent of all parties, 28 U.S.C. § 157(e), even presuming Defendants' refusal to consent does not affect the district court's ability to "delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." *In re*

*Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993). In sum, Defendants have not met their burden of demonstrating that withdrawing the reference is proper and their motion will be denied.

**III. Conclusion**

For the foregoing reasons, the motion to modify, or partially withdraw, the reference filed by Defendants Site Management, Inc. and Site Leasing, Inc. will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge